# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ANNE BUSSELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>DOUGLAS CORPORATION OF MICHIGAN; and DOES 1 to 10,<br><br>Defendants. | Case No. 22-cv-10231<br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff ANNE BUSSELL ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1. Plaintiff, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants DOUGLAS CORPORATION OF MICHIGAN, and DOES 1 to 10 (collectively, "Defendants") collectively own, lease, and/or operate at least sixty-three (63) Wendy's restaurants in the state of Michigan. Plaintiff's claims arise

from her own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at ten (10) of Defendants' facilities, also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations.  *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Plaintiff seeks in this action.  In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy[.]

42 U.S.C. § 12188(a)(2).

4. Numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that

the Defendants' existing internal maintenance procedure (discussed at ¶¶ 17-21 below) is inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies to ensure that their facilities comply with the ADA implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify their existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 9.a. and 9.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for her or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

3

Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8.     Plaintiff Anne Bussell is, and at all times relevant hereto was, a resident and citizen of Warren, Michigan.  Ms. Bussell suffered a stroke in 2003, leading to multiple physical complications.  She suffers from Chronic Obstructive Pulmonary Disease (COPD), an umbrella term for a group of lung diseases that block airflow and make it difficult to breathe.  Further, Ms. Bussell has Congestive Heart Failure.  Despite these significant injuries, Ms. Bussell attempts to use a walker as much as possible, however, some days she is forced to use the wheelchair.  Plaintiff is, therefore, a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

9.     Defendant DOUGLAS CORPORATION OF MICHIGAN is and, at all relevant times, was a Michigan Corporation, qualified to do business in the State of Michigan as the owner, lessee, and/or operator of dozens of Wendy's restaurants in this state.  Defendant has its principal office at 201 West Mitchell Street #198, Petoskey, Michigan, 49770-2325.

10. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believes, and, based thereon, alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

11. Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

12. Plaintiff is further informed and believes, and, based thereon, alleges that Defendants collectively own, lease, and/or operate sixty-three (63) Wendy's doing business in the state of Michigan, as described herein.

13. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are, therefore, subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities**

14. Plaintiff visited Defendants' facilities located at 4749 Conner Street, Detroit, Michigan, on August 7, 2021, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle, and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible Parking Area and other ADA accessibility violations as set forth in more detail below.

15. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons, and she likes to stop for Wendy's due to her preference for their $5 deal meal, ordering a burger, fries, and a drink. On August 7, 2021, Ms. Bussell traveled to the downtown Detroit area to complete her weekly grocery shopping and visit other stores in the area. Plaintiff usually visits the area multiple times per month to visit these stores. She plans to dine at Defendants' 4749 Conner Street, Detroit, Michigan facility during these visits. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

16. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be deterred from returning to and fully and safely accessing

6

Defendants' facilities due to the discrimination she has previously encountered there.

### Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities

17.     As the owner and/or operator of its facilities, Plaintiff is informed and believes, and, based thereon, alleges that, as a Wendy's franchisee pursuant to franchise agreements, Defendants utilize an Operations Standards Manual (the "Manual") issued by the franchisor, and is required to follow all of the manual's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting further management, administration, and maintenance policies, practices, and procedures related to "Daily Outside Maintenance."  Plaintiff is further informed and believes that, pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drive throughs, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.  Additionally, Plaintiff is informed and believes, and, based thereon, alleges that the Wendy's franchise agreements require remodeling, redecoration, structural changes, and modifications to the restaurants once every ten (10) years.

18.     Plaintiff is further informed and believes that, pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drive throughs, parking lots, and landscaped areas at each individual location in

conformance with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property, as described in the Manual.

19. Plaintiff is further informed and believes, and based thereon alleges that, pursuant to the franchise agreements, Defendants are required to designate an "Approved Operator" that supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through a Director of Operations, who supervises Area Directors or Regional Managers, who in turn directly supervise District or General Managers, and then individual restaurant managers. Plaintiff is informed and believes that collectively, these positions constitute the "Approved Operator" charged with overseeing operations of Defendants' restaurants for compliance with Wendy's policies through regular and complete inspections of Defendants' restaurants.

20. Defendants' centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

21. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

   a. 130 Brown Road, Auburn Hills, Michigan:

      i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%[1];

      ii. The purportedly accessible landing at the top of the curb ramp to the building had a running and cross slope exceeding 2.1%;

      iii. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.[2]

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, *i.e.*, 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See* Appendix D to 28 C.F.R. Part 36, § 4.7.5, § 4.8.2.

[2] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, *i.e.*, 2.1%. *See* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

b. 4749 Conner Street, Detroit, Michigan:

   i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%.

c. 388 South Broadway Street, Lake Orion, Michigan:

   i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%.

d. 7149 Dixie Highway, Clarkston, Michigan:

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

e. 847 South State Street, Caro, Michigan:

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

f. 7945 Gratiot Road, Saginaw, Michigan:

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

g. 12150 Market Place Drive, Birch Run, Michigan:

   i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%.

    h. 436 South Main Street, Lapeer, Michigan:

        i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33% and flares exceeding 10%;

        ii. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%.

    i. 24999 Northwestern Highway, Southfield, Michigan:

        i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had running slope exceeding 2.1%.

    j. 7850 Gratiot Avenue, Detroit, Michigan:

        i. The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.33%.

22. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

23. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

24. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

25. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

26. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any DOUGLAS CORPORATION OF MICHIGAN and DOES 1 to 10's location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendant's failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of their facilities.

27. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

28. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

29. <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

30. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

31. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

### VIOLATION OF THE ADA, TITLE III
### [42 U.S.C. §§ 12101, *et seq.*]
### (Against all Defendants)

32. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

33. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, she is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

34. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

35. Plaintiff is informed and believes, and, based thereon, asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

36. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of their facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

37. The architectural barriers described above demonstrate that Defendants' facilities were constructed or altered in a manner that causes them to not be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

38. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

39. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify their existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed, constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

40. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

41. Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

42. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

   a.  A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

   b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and their implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify their existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place;

   c.  An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

   d.  Payment of costs of suit;

  e.  Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

  f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  February 4, 2022       Respectfully Submitted,

                /s/  *E. Powell Miller*
                E. Powell Miller (P39487)
                Sharon S. Almonrode (P33938)
                **THE MILLER LAW FIRM, PC**
                950 West University, Suite 300
                Rochester, Michigan  48307
                Phone: (248) 841-2200
                epm@millerlawpc.com
                ssa@millerlawpc.com

                Jordan T. Porter
                **NYE, STIRLING, HALE**
                **& MILLER, LLP**
                33 West Mission Street, Suite 201
                Santa Barbara, CA 93101
                Phone: 805-963-2345
                jordan@nshmlaw.com

                Benjamin J. Sweet
                **NYE, STIRLING, HALE**
                **& MILLER, LLP**
                1145 Bower Hill Road, Suite 104
                Pittsburgh, PA 15243
                Phone: 412-857-5352
                ben@nshmlaw.com

                *Attorneys for Plaintiff and the Class*